1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| PACKAGING CORPORATION OF AMERICA, INC., <br><br>                 Plaintiff, <br><br>     v. <br><br> LUNDBERG, LLC f/k/a A.H. LUNDBERG ASSOCIATES, INC., DUSTEX CORPORATION d/b/a LDX SOLUTIONS, and A.H. LUNDBERG SYSTEMS, INC., <br><br>               Defendants. | Case No. _____ <br><br> **COMPLAINT FOR:** <br><br> **(1) PRODUCT LIABILITY – NEGLIGENCE;** <br><br> **(2) PRODUCT LIABILITY – STRICT LIABILITY;** <br><br> **(3) NEGLIGENCE;** <br><br> **(4) BREACH OF IMPLIED WARRANTY – FITNESS FOR A PARTICULAR PURPOSE;** <br><br> **(5) BREACH OF EXPRESS WARRANTY;** <br><br> **(6) FRAUD; AND** <br><br> **(7) UNFAIR AND DECEPTIVE BUSINESS PRACTICES.** <br><br> JURY DEMAND |

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Plaintiff Packaging Corporation of America, Inc. (hereinafter the "PCA" or "Plaintiff") complains and alleges causes of action against Lundberg LLC f/k/a A.H. Lundberg Associates, Inc., Dustex Corporation d/b/a LDX Solutions, and A.H. Lundberg Systems, Inc. (the "Lundberg Defendants" or "Defendants") as follows.

## THE PARTIES

1.      PCA is a publicly traded Delaware corporation with its principal place of business in Lake Forest, Illinois.  PCA is a leading manufacturing of paper and pulp products.  PCA's business operations are located in 29 states as well as Canada.  In Washington State, PCA operates in four locations:  Wallula, Richland, Auburn, and Algona.

2.      Lundberg, LLC f/k/a A.H. Lundberg Associates, Inc. ("Lundberg"), is headquartered and conducts its principal operations in Bellevue, Washington.  For many years, A.H. Lundberg Associates, Inc. and/or Lundberg, LLC operated as a separate company, and on information and belief was at times owned, affiliated, and/or controlled by A.H. Lundberg Systems, Inc., of Canada.  Lundberg is a leading engineering and equipment supplier in the pulp and paper industry, wood products industry, and many other process industries.  Several of the products at issue in this case were designed, manufactured, assembled, installed, marketed, sold, and/or maintained by Lundberg in the state of Washington.  On information and belief, Lundberg now is wholly owned, controlled, and operated by Dustex Corporation, d/b/a LDX Solutions, a resident of Georgia and North Carolina.

3.      On information and belief, Dustex Corporation, d/b/a LDX Solutions, is a North Carolina corporation with its principal place of business in Kennesaw, Georgia.  On information and belief, LDX Solutions as a d/b/a resulted from the combination of the separate brands Lundberg, LLC and Dustex LLC.

4.      On information and belief, A.H. Lundberg Systems, Inc., is a Canadian corporation with its principal place of business in Vancouver, British Columbia, Canada ("Lundberg Canada").  Lundberg Canada is a leading engineering company providing environmental systems, energy

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

optimization, chemical handling, and process engineering services to power, resource, and processing industries.  Lundberg Canada owned, was affiliated with, and/or controlled Lundberg for years, and manufactured equipment and systems for Lundberg for installation in pulp and paper mills across the United States including in Washington State.  Several of the products at issue in this case were designed, manufactured, assembled, installed, marketed, sold, and/or maintained by Lundberg Canada.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is complete diversity between PCA and the Lundberg Defendants and PCA seeks in excess of $75,000 (the exact amount to be determined at trial).

6.      Venue is proper in the Western District of Washington under 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to PCA's complaint occurred in this judicial district, Lundberg is based in this district, and a substantial part of the corporate conduct that is the subject of PCA's complaint was in this judicial district.

7.      Personal jurisdiction over Lundberg is proper in this Court because, at times relevant to this Complaint, Lundberg was a Washington entity with a principal place of business in Bellevue, Washington.

8.      Personal jurisdiction over Dustex Corporation, d/b/a LDX Solutions, is proper in this Court because Dustex Corporation, d/b/a LDX Solutions, owns, operates, and controls Lundberg, and those operations primarily occur in Washington State.  Moreover, LDX Solutions has purposely availed itself of the jurisdiction of this Court by virtue of its substantial contacts, operations, and finances in Washington State, including substantial product design, development, marketing and sales in Washington State.  LDX Solutions now controls the design, manufacture, maintenance and installation processes by Lundberg, which operates and is based in Washington State.  LDX Solutions purposefully availed itself to the jurisdiction of this Court through

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   systematic contacts with Washington State related to the defective products at issue in this case.

2   In any event, LDX Solutions is an alter ego of Lundberg.

3        9.    Personal jurisdiction over Lundberg Canada is proper in this Court because

4   Lundberg Canada is a foreign entity that designed, manufactured, assembled, installed, marketed,

5   sold, and/or maintained, with and for Lundberg, many of the products at issue in this case and then

6   provided such products to Lundberg in Washington State.  Moreover, on information and belief,

7   Lundberg Canada was affiliated with, owned, operated and/or controlled Lundberg at times

8   relevant to this Complaint.  Lundberg Canada purposefully availed itself to the jurisdiction of this

9   Court through systematic contacts with Washington State related to the defective products at issue

10   in this case.  In any event, Lundberg Canada was an alter ego of Lundberg.

11                             **INTRODUCTION**

12        10.    For over 50 years the Lundberg Defendants have been considered leading

13   engineering and system experts for equipment and processes designed specifically for paper and

14   pulp mills.  An integral aspect of the Lundberg Defendants' business has been designing,

15   manufacturing, installing, and maintaining systems that evacuate non-condensable gases that may

16   be combustible from the paper and pulp mill environment.  These systems that transport non-

17   condensable gases require specific safety devices to be installed to mitigate the risk of an

18   explosion.  One of these safety devices is known as a flame arrester and it is designed to stop the

19   propagation of a flame throughout the entire system by stopping its transmission from one side of

20   the flame arrester to the other side of the flame arrester.  A flame arrester is an integral part of the

21   entire system and serves as a critical safety device used to stop flames spreading within the system.

22        11.    Since 1977, the Lundberg Defendants have been designing, manufacturing,

23   installing, assembling, selling, marketing, and maintaining proprietary design flame arresters for

24   use in these systems ("Lundberg Flame Arresters").  The Lundberg Defendants have placed

25   hundreds if not thousands of the Lundberg Flame Arresters into commerce, and installed and

26

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   maintained them at pulp and paper mills across the United States and internationally, including at

2   PCA's mills.

3        12.    It was recently discovered that contrary to representations and warranties made by

4   the Lundberg Defendants for years, and contrary to the expectations and standards in the industry,

5   the Lundberg Flame Arresters were never tested and were never certified under any applicable

6   standards. This very basic and highly material information was never disclosed by the Lundberg

7   Defendants, despite the Lundberg Defendants being present at PCA's paper and pulp mills

8   frequently and regularly for decades up until 2018. This material information was concealed from

9   PCA and the industry by the Lundberg Defendants. Because it is not apparent from regular usage

10  or on the face of the Lundberg Flame Arresters, this latent defect went undetected by PCA.

11       13.    Based on the discovery that Lundberg Flame Arresters were never tested and were

12  never certified to any applicable standards, PCA sent a Lundberg Flame Arrester that it had

13  purchased directly from the Lundberg Defendants in or around November 2017 for offsite testing

14  by an independent third-party facility in 2018. That Lundberg Flame Arrester completely failed

15  to operate as represented—it failed to mitigate any flame passage from one side of the safety device

16  to the other side. But, that Lundberg Flame Arrester unfortunately was damaged after only one

17  test, and so additional testing of Lundberg Flame Arresters was needed by PCA. At great cost,

18  PCA then removed all Lundberg Flame Arresters from the company's mills, replacing the critical

19  safety devices with new flame arresters that were designed, manufactured, tested, and certified to

20  applicable standards by parties not involved in this litigation.

21       14.    Again at great cost, PCA then sent multiple Lundberg Flame Arresters of varying

22  sizes that had been installed at its mills and removed in 2018 for off-site testing by the same

23  leading, independent, third-party testing facility. During testing in 2019, none of the Lundberg

24  Flame Arresters worked as designed, manufactured, and marketed; none prevented the spread of

25  flame from one side of the device to the other side; none operated as represented by the Lundberg

26  Defendants; and none operated as would be expected from the industry for a critical safety device.

**COMPLAINT - 5 OF 39**

Surprisingly, the Lundberg Flame Arresters actually accelerated the flame, increasing the velocity and therefore magnitude of the explosive event.

15. As an engineering and system design firm, the Lundberg Defendants have dominated the paper and pulp mill industry for decades and their products are universally used and generally regarded as safe and state of the art. But it is now known that the Lundberg Defendants' products are untested, defectively designed, uncertified, and completely unable to perform their primary purpose.

16. PCA seeks to recover all costs associated with: (1) purchasing, installing and maintaining the Lundberg Defendants' systems; (2) evaluating and completing engineering and upgrades to the systems designed, manufactured, assembled, installed, marketed, sold, and maintained by the Lundberg Defendants; and (3) testing the Lundberg Flame Arresters for latent defects and replacing the defective Lundberg Flame Arresters. PCA also seeks costs and fees for bringing this action, as well as treble damages due to the Lundberg Defendants' fraudulent, unfair, and deceptive business practices.

## FACTUAL BACKGROUND

**I. PCA HIRED THE LUNDBERG DEFENDANTS TO DESIGN, MANUFACTURE, ASSEMBLE, AND INSTALL SYSTEMS THAT WERE SAFE AND EFFECTIVE AT THE PCA MILLS.**

17. PCA is engaged in processing raw materials to manufacture paper, containerboard, and corrugated products. PCA completes the necessary chemical processes at various mills across the country. Pertinent to this lawsuit, PCA manufactures products at mills located in Counce, Tennessee ("Counce Mill"), International Falls, Minnesota ("I'Falls Mill"), Jackson, Alabama ("Jackson Mill"), Valdosta, Georgia ("Valdosta Mill"), and Wallula, Washington ("Wallula Mill"). For purposes of this complaint, these mills are collectively referred to as the "PCA Mills."

18. The PCA Mills are subject to extensive regulatory oversight, including regulations pertaining to environmental standards and worker safety.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

19.     During the paper and pulp mill manufacturing process, combustible gases, known as non-condensable gases ("NCG"), are yielded as a byproduct.  The NCGs are highly combustible and must be captured and controlled to comply with environmental regulations.

20.     The Lundberg Defendants engineer, design, manufacture, assemble, market, sell, install, and maintain critical and complicated systems for the paper and pulp industry, including systems that evacuate and incinerate the NCGs ("Lundberg Systems").

21.     The Lundberg Systems are "pollution compliance solutions" and are designed to, among other things, safely transport and remove highly combustible NCGs to effectuate compliance with environmental and worker safety standards.

22.     The Lundberg Defendants advertise and hold themselves out as experts in engineering, designing, manufacturing, assembling, installing, and maintaining systems for the paper and pulp industry.  As Lundberg states on its website:

> Lundberg, an LDX Solutions brand, has 80 years of global experience engineering systems that improve operational efficiencies, expand plant capacity, and reduce pollution emissions. Our commitment to the industry and the experience of our staff give us the expertise that our clients have come to rely on.

(*See* https://lundbergllc.com/).

23.     Similar statements are also found in the predecessor company to Lundberg, A.H. Lundberg Associates, Inc.'s, marketing materials and research white papers.  For example, Lundberg published working papers stating that "as the leading process system vendor for environmental compliance systems, A.H. Lundberg Associates, Inc., was instrumental in providing innovative methods for the implementations of these processes and the reduction of energy costs associated with their operation."  (Declaration of Andrew Barr ("Barr Decl."), Ex. A, "Environmental Projects for the Pulp and Paper Industry in the U.S.A.," Ms. Karra Nichols and Mr. David W. Keyser, A.H. Lundberg Associates, Inc.)  Lundberg further claims that it "has played a key role in the design and supply of [combustible gas evacuation] systems to U.S. kraft pulp mills" and that its "extensive experience with [combustible gas evacuation] systems has improved

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

[its] knowledge so that [it] may more effectively collect, condition, and transport the [gases] for incineration." (Barr Decl., Ex. A at 1-2.)  Importantly, Lundberg states that "Lundberg Associates' [combustible gas evacuation] systems are designed with multiple safety features" designed to prevent an explosion from occurring in the system.  (Barr Decl., Ex. A at 3.)  One such safety feature are the Lundberg Flame Arresters.

24.     Numerous paper and pulp mills in the United States utilize Lundberg Systems and rely on the quality and safety of the systems and their component parts to provide safe operations. They also rely on ongoing maintenance, repairs, and improvements by the Lundberg Defendants to the Lundberg Systems because the Lundberg Systems are specially designed for their specific installation and use, and are proprietary rather than off-the-shelf systems.  The Lundberg Systems include component parts that are designed and installed for safety purposes, and are critical in mill training, policies, and procedures such as boundaries for Process System Management, worker and safety training, and periodic maintenance.

II.     **THE COMBUSTIBLE NCGS MUST BE TRANSPORTED AND INCINERATED BY SPECIALLY DESIGNED LUNDBERG SYSTEMS.**

25.     An example of one of the Lundberg Systems is a "Non-Condensable Gas System," which removes highly combustible NCGs from the paper and pulp manufacturing processes and transports them to be destroyed in an on-site incinerator.  These Lundberg Systems are subject to environmental and safety standards imposed by governmental agencies.  Lundberg Systems are critical for the safe operation of paper and pulp mills, and the safety of the mill's workers.  The Lundberg Defendants hold themselves out as, and are generally considered, experts in engineering, designing, manufacturing, installing, and maintaining Lundberg Systems and their component parts.

26.     In certain of the PCA Mills, PCA hired the Lundberg Defendants to design, manufacture, assemble, and install Lundberg Systems that, among other things, safely processed and removed NCGs from the PCA Mills.  PCA chose the Lundberg Defendants to design,

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

manufacture, assemble, and install the Lundberg Systems at the PCA Mills because, since the 1950s, the Lundberg Defendants have been the industry leader for designing and installing engineered systems, including Lundberg Systems, for use in paper and pulp mills. The Lundberg Defendants held themselves out as experts and the gold standard in the industry.

27.     Although an oversimplification, the Lundberg Systems remove harmful and dangerous byproducts from the manufacturing processes of the pulp mill system through a series of connected pipes that ultimately lead to an incinerator. The Lundberg System designed to remove NCGs from the mill is unidirectional, meaning that it is designed to transport all NCGs in the same direction towards the incinerator. The incinerator burns the NCGs consistent with best practices and environmental standards. This Lundberg System's primary purpose is to collect and dispose of the highly combustible NCGs while simultaneously providing a series of safeguards to prevent an explosion if a flame enters the system.

28.     The Lundberg Defendants have stated that "most importantly, the [Lundberg System] must incorporate safety features which will allow easy operation of the system and yet consider the fact that [NCGs are] hazardous and can cause damage to life or property if not handled properly."  (Barr Decl, Ex. B, "Collection and Incineration of High Volume-Low Concentration Pulp Mill Noncondensible Gases," Mr. Douglas K. Giarde, A.H. Lundberg Associates, Inc. and Mr. Michael Crenshaw, PCA.)

29.     The Lundberg Defendants recognize that they are the industry leaders in providing engineered systems for the paper and pulp industry. In fact, in recent filings, they describe themselves as "a leading engineering and equipment supplier in the pulp and paper industry, wood products industry, and many other process industries."

30.     Moreover, the Lundberg Defendants state that they "offer spare parts, inspections, rebuilds, and product improvements for all process systems and equipment within our areas of expertise, including … [Lundberg Systems]."  (Barr Decl., Ex. C, Lundberg Service and Spare Parts Brochure.)

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

31.    The Lundberg Defendants' products are ubiquitous in the paper and pulp mill industry and it is possible, if not likely, that a paper and pulp mill employee will spend an entire career working solely with Lundberg Systems.

32.    Regarding Lundberg Systems, Lundberg has stated:

Lundberg Associates has been instrumental in the design and supply of [Lundberg Systems] for U.S. mills.  Various options and designs were provided in order to suit each mill's particular requirements.  Potential incineration locations have included Lundberg Associates' direct fired thermal oxidizers with SO2 scrubbing, recovery boilers, power boilers, lime kilns, and open flares. Each system was individually tailored to collect the required sources and to incinerate the gases to meet government specifications within three years of implementation of the Cluster Rules.

(Barr Decl., Ex. A at 1.)

33.    PCA is not an expert in designing, manufacturing, assembling, and/or installing Lundberg Systems and thus relied on the Lundberg Defendants for each aspect of this process, including the Lundberg Defendants' representations and warranties made about the integrity, safety, and operation of the Lundberg Systems.

34.    The Lundberg Defendants knew they were uniquely positioned to make recommendations to PCA regarding the composition of Lundberg Systems and that PCA would be relying on the Lundberg Defendants' expertise in designing, manufacturing, assembling, and installing the Lundberg Systems at the PCA Mills.

35.    The Lundberg Defendants also knew that PCA was relying on the Lundberg Defendants to design, manufacture, assemble, and install Lundberg Systems that complied with or exceeded all safety and environmental standards.

36.    The Lundberg Defendants similarly knew that PCA would not have hired the Lundberg Defendants to design the Lundberg Systems at the PCA Mills if PCA knew that the Lundberg Systems posed undue risks to PCA's employees and/or manufacturing plants.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

III.   **THE LUNDBERG FLAME ARRESTERS INCORPORATED INTO THE LUNDBERG SYSTEMS ARE UNTESTED, UNCERTIFIED, AND UNSAFE.**

37.   The NCGs transported in the Lundberg Systems are highly flammable and a flame in the Lundberg System could lead to an explosion.  The Lundberg Defendants specifically know this basic fact and acknowledge in a manual provided to PCA that "[t]he nature of the noncondensible gases is to be extremely flammable.  The design of the [Lundberg System] includes multiple backup systems to insure the greatest amount of flame safeguards and to minimize any remotely possible damage." (Barr Decl., Ex. D, Operating and Maintenance Manual for the Low Volume High Concentration Non-Condensible Gas Collection and Incineration for PCA's Valdosta, Georgia Mill (J-895386).)

38.   As part of the Lundberg Systems, the Lundberg Defendants designed, marketed, sold, installed, serviced, and maintained Lundberg Flame Arresters for PCA and other pulp and paper mills in the industry.  Flame arresters are devices installed in a gas piping system, such as a Lundberg System, that are intended to prevent passage of flames through the device in the event that the gas stream is ignited.

39.   Given their importance, it is typical for flame arresters to be tested and certified by an independent testing laboratory, such as Underwriters Laboratories (UL) or Factory Mutual (FM).  At minimum, a flame arrester should be tested by the manufacturer against a specific standard (*e.g.*, standards set forth by the U.S. Coast Guard, American National Standards Institute, American Society of Mechanical Engineers, etc.) to ensure that it is able to perform its essential function.

40.   The Lundberg Defendants have marketed themselves as the leading designer, manufacturer, and installer of flame arresters in the paper and pulp mill industry with over 850 flame arresters installed throughout the industry.  (*See* Barr Decl. Exs. A and C.)

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

41.     On its website and to the paper and pulp industry, to this day the Lundberg Defendants hold themselves out as industry experts for the Lundberg Systems generally as well as the component part of Lundberg Flame Arresters specifically:

> The collection of [Total Reduced Sulfur compounds] and volatile gases in Non-condensible Gas (NCG) and Odor Abatement Systems is an integral part of the pulp mill's environmental program. The flammability of many of these gases presents the possibility of flame propagation in the collection system's pipe lines. The flame arrester is an effective precaution against flame propagation and possible damage to process equipment. To meet the rigorous standards of our [Lundberg Systems], Lundberg developed and supplies a proprietary designed flame arrester.  Since 1977, with hundreds of units installed, Lundberg's Flame Arrester has proven to be a reliable and versatile device for system safety and protection.

(*See* https://lundbergllc.com/wp-content/uploads/gravity_forms/4-b553dcb80bdfb0137377e7ec5bee4ee1/2018/09/Lundberg-Flame-Arrester.pdf?TB_iframe=true; *see also* Barr Decl. Ex. E, Lundberg Flame Arresters Brochure; and Ex. F, A.H. Lundberg Associates, Inc., Flame Arresters Brochure.)

42.     The Lundberg Defendants knew that the Lundberg Flame Arresters were a critical component of the "multiple backup systems" and "flame safeguards" described by the Lundberg Defendants.  Lundberg Flame Arresters were incorporated directly into the Lundberg Systems to prevent flame propagation in the event a flame is introduced into these systems.

43.     In Lundberg Systems, Lundberg Flame Arresters are integrated in strategic locations and are designed to prevent a flame from spreading from one section of the system to a second section.  Flame arresters effectively serve as a firewall to ensure that a flame does not lead to a fire event in the entire system or to an explosion.

44.     Flame arresters are integral to the safety of the paper and pulp mill environment because an uncontrolled fire or explosion would put employees' lives and PCA's property at risk. Simply put, without functioning flame arresters, many of the systems at a paper and pulp mill would not meet applicable standards, would not pass government inspections, and would not be safe to operate.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

45.     Indeed, the importance of properly functioning flame arresters is not subject to dispute.  The Lundberg Defendants have stated that "[i]n order to obtain the safe and reliable incineration of the NCG in any incineration point, a number of safety and operational considerations are *necessary*."   One of these "safety and operational considerations" is the Lundberg Flame Arresters:

> Flame arresters provided in the gas lines at every LVHC NCG source and just upstream of where the NCG is injected into the incineration equipment will protect the LVHC sources and the [Lundberg System] equipment from damage in the unlikely event of a source of ignition combined with a gas combustibles concentration above the [lower flammability limit] and below the [upper flammability limit].

(Barr Decl., Ex. G, "Alternative Equipment for the Incineration of Noncondensible Gases," Mr. David W. Keyser, P.E., Lundberg.)

46.     The Lundberg Defendants are clear that Lundberg Flame Arresters must be properly designed and properly functioning or the Lundberg System is unsafe:

> Even if care is taken to keep the gases outside the explosive range, and care is taken to remove ignition sources, there is still a remote possibility that a fire may occur. To minimize any potential damage flame arresters should be installed at critical points. They are designed to prevent the spread of a fire and to minimize pipeline and equipment damage. Typically flame arresters should be placed at each LVHC NCG source and at each incineration point.

(Barr Decl., Ex. H, "Collecting and Burning Noncondensible Gases," Mr. L. Paul Johnson, P.E., A.H. Lundberg Associates, Inc. and Mr. Ben Lin, P.Eng., A.H. Lundberg Systems Ltd.).

47.     The Lundberg Defendants describe the role of Lundberg Flame Arresters in a Lundberg System as follows:  "these flow devices placed at strategic locations in the system are designed to block the propagation of the flame in the noncondensible gas system.  The cylindrical devices have a core of thin gauge stainless steel to serve as the arresting method.  The flame arresters are intended to:

     a.   Dissipate the heat of combustion as rapidly as possible by large surface area to act as a heat sink.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

b.  Disrupt the shock front associated with the flame propagation."

(Barr Decl., Ex. D at 3.)

48.    A single Lundberg System will typically have multiple Lundberg Flame Arresters installed at various locations, and it is common for the single Lundberg System to have multiple sized Lundberg Flame Arresters incorporated.  Regardless of size, the Lundberg Flame Arresters need to be able to prevent flame propagation or they fail their essential purpose and pose a significant safety risk to the paper and pulp mill and its employees.

49.    PCA hired the Lundberg Defendants to design, manufacture, assemble, install, and maintain 57 Lundberg Flame Arresters at the PCA Mills, including in mills located in Washington State.

50.    Specifically, PCA hired the Lundberg Defendants to design, manufacture, assemble, install, and maintain Lundberg Systems with Lundberg Flame Arresters at the following locations:

    a.  Counce Mill –        10 Lundberg Flame Arresters

    b.  I'Falls Mill –        13 Lundberg Flame Arresters

    c.  Jackson Mill –        2 Lundberg Flame Arresters

    d.  Valdosta Mill –        20 Lundberg Flame Arresters

    e.  Wallula Mill –        12 Lundberg Flame Arresters

51.    At the PCA Mills, the Lundberg Flame Arresters ranged from a diameter of 2" to 20", but the majority of the Lundberg Flame Arresters at the PCA Mills had diameters of 3", 4", or 6".

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

52.     The Lundberg Flame Arresters are generally composed of two main parts:   an external housing and an internal cylindrical device.   Exemplary images of both the external housing and internal cylindrical device are set forth below:


Internal Cylindrical Device

External Housing



53.     The Lundberg Flame Arresters' external housing is installed directly into the Lundberg System piping.   As demonstrated in the image of the external housing above, the Lundberg Flame Arresters' internal cylindrical device is not visible without removing the heavy external metal housing (the square metal piece adorned with bolts at the top of the above image of the external housing) and physically removing the internal cylindrical device.   In order to remove the heavy metal housings and physically remove the internal cylindrical devices, all manufacturing at the mill must be stopped and the Lundberg System must be taken offline.

54.     If working as designed, the NCGs pass directly through the Lundberg Flame Arrester's internal cylindrical device on their way to the incinerator.   The internal cylindrical device is non-active unless and until a flame enters the Lundberg System.   If a flame enters the Lundberg System, the internal cylindrical device is intended to block the propagation of flame from one section of the Lundberg System to another section of the Lundberg System.

55.     The Lundberg Defendants represented to PCA for decades that Lundberg Flame Arresters were well-designed safety devices, were both safe and effective, met the highest

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

standards in the industry, and would perform their intended purpose: to stop the propagation of flames in the Lundberg Systems.

56.    The Lundberg Defendants not only designed, manufactured, sold, and installed Lundberg Flame Arresters for or at PCA for decades, but the Lundberg Defendants' staff were onsite regularly at PCA to review Lundberg Systems, provide maintenance and repairs, to replace component parts, and to update Lundberg Systems.

57.    At no point while onsite did any employee or representative of the Lundberg Defendants inform PCA that the Lundberg Flame Arresters were unfit for their intended purpose due to latent defects that rendered the Lundberg Flame Arresters useless.

58.    At no point while onsite did any employee or representative of the Lundberg Defendants inform PCA that the Lundberg Flame Arresters were not certified, had never been tested, and did not meet U.S. and international standards. These basic and material facts were concealed from PCA.

## IV.   PCA LEARNS THAT THE LUNDBERG FLAME ARRESTERS CONTAIN LATENT DEFECTS THAT RENDER THEM UNFIT FOR THEIR INTENDED PURPOSE.

59.    In late 2017, PCA conducted a Process Safety Management review at each of the PCA Mills. The objective of the Process Safety Management review was to, among other things, identify safety risks or hazards present at the PCA Mills.

60.    PCA evaluated flammability as a potential hazard. Reviewing safety systems focused on flammability is especially important in the Lundberg Systems because, as the Lundberg Defendants have stated, "[t]he nature of the noncondensible gases is to be extremely flammable." (Barr Decl., Ex. D at 3.)

61.    PCA began to review and assess whether the Lundberg Flame Arresters that were incorporated into the Lundberg Systems worked properly and effectively. The review was intended to simply confirm that the Lundberg Flame Arresters worked as intended and were able to prevent passage of flames through the device in the event that the gas stream is ignited. This

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

started with a superficial inspection of the Lundberg Flame Arresters, but soon engineers recommended a more detailed inspection.  In many instances, this type of work would have been done by Lundberg.

62.     When engineers not associated with Lundberg did a more detailed inspection, it was noted that the Lundberg Flame Arresters had an atypical internal design and that internal component of the Lundberg Flame Arresters did not appear to be manufactured to appropriate tolerances (*e.g.*, the gaps were much larger than anticipated).  As a result, PCA began to gather more information on the design, manufacturing, testing, and certification of the Lundberg Flame Arresters.

63.     As PCA and its consultants began this information-gathering process, PCA was comforted by the fact that hundreds if not thousands of Lundberg Flame Arresters were installed in other paper and pulp mills across the country, and the Lundberg Defendants generally were an expert engineering and design firm with decades of experience in the industry.  PCA knew and had worked for years with the Lundberg Defendants' engineers and experts, and had a degree of confidence in their systems and work because the Lundberg Defendants were considered an expert in the industry.  PCA did not suspect, and had no reason to suspect, that the Lundberg Systems and Lundberg Flame Arresters were far from what was represented, marketed, and sold to PCA.

64.     Out of an abundance of caution, however, PCA requested that the Lundberg Defendants provide design and manufacturing specifications as well as all certifications for the Lundberg Flame Arresters.  PCA also requested that the Lundberg Defendants provide information demonstrating that the Lundberg Defendants tested the Flame Arresters to accepted U.S. and international standards before placing them on the market for the stated purpose of mitigating the risk of a flame spreading through a Lundberg System.

65.     The Lundberg Defendants delayed responding initially, and ongoing projects by the Lundberg Defendants at PCA Mills were jeopardized because of a failure or perceived refusal to provide information.  Finally, for the first time ever, the Lundberg Defendants stated that they

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

could not provide such information because they in fact <u>had never tested or certified the Lundberg</u> <u>Flame Arresters to any applicable standards</u>, either internally or externally with a third-party testing facility.  The Lundberg Defendants also refused to provide any actual design and manufacturing specifications, and only provided a rough, hand-drawn schematic and a 1985 article that set forth general engineering techniques for flame arresters.

66.    The Lundberg Defendants were ultimately either unable or unwilling to provide any data or information showing that the Lundberg Flame Arresters were able to perform their primary purpose.  The Lundberg Defendants thus had no factual basis to state that the Lundberg Flame Arresters are "an effective precaution against flame propagation and possible damage to process equipment," and the Lundberg Defendants further knew that without any testing or certification that the statement was false.

67.    The Lundberg Defendants also knew they had no basis to state that Lundberg Flame Arresters have "proven to be a reliable and versatile device for system safety and protection." (Barr Decl., Exs. E and F.)  That statement is demonstrably false.

68.    PCA and many others in the industry relied on the Lundberg Defendants' representations, statements, and warranties when evaluating and making the decision on what engineering firm to hire, what systems to install, and what flame arresters to use in those systems. The Lundberg Defendants for decades concealed these basic facts – no testing, no certifications and no effort to prove the design of a critical safety device – from PCA and the industry.

69.    Simply put, this was the first time PCA learned that the Lundberg Defendants, as experts in the industry, had never tested or certified the Lundberg Flame Arresters to applicable U.S. and international standards, including applicable ISO and U.S. Coast Guard protocols and/or standards.

70.    PCA relied on the Lundberg Defendants' engineering expertise, specific to the paper and pulp mill industry, and several express representations regarding both the efficacy and safety of the Lundberg Systems and the Lundberg Flame Arresters, when evaluating and deciding

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    to hire the Lundberg Defendants to design, install, maintain, and update systems.  PCA relied on

2    these same things when deciding to purchase component parts from the Lundberg Defendants such

3    as new or replacement Lundberg Flame Arresters, including as recently as November 2017.  If

4    PCA had known that the Lundberg Defendants had never tested and certified the Lundberg Flame

5    Arresters to applicable standards, it never would have purchased and installed the Lundberg

6    Systems.

7    **V.    PCA HIRED AN INDEPENDENT THIRD-PARTY CERTIFICATION FACILITY TO TEST THE**

8    **LUNDBERG FLAME ARRESTERS.  THE TESTING DEMONSTRATED CONCLUSIVELY THAT**
     **THE LUNDBERG FLAME ARRESTERS HAD LATENT DEFECTS AND WERE UNABLE TO**

9    **PERFORM THEIR PRIMARY PURPOSE.**

10        **A.    A Test Lundberg Flame Arrester Failed Independent Third-Party Testing.**

11        71.    In an effort to determine whether the Lundberg Flame Arresters were an effective

12   safety device, which was required due to their never being tested and certified by the Lundberg

13   Defendants, PCA hired an independent engineering consulting firm and an independent third-party

14   testing facility, Aber Shock in Wales, United Kingdom, to test the efficacy of a Lundberg Flame

15   Arrester.

16        72.     Aber Shock is one of the only flame arrester testing and certification facilities in

17   the world.  Aber Shock was available to test one Lundberg Flame Arrester in January 2018 ("2018

18   Test").

19        73.    PCA already had purchased a brand new 6" Lundberg Flame Arrester directly from

20   Lundberg in November 2017 ("6" Test Flame Arrester").

21        74.    The 6" Test Flame Arrester had never been introduced into a Lundberg System and

22   was brand new at the time of the 2018 Test.  Put differently, the 6" Test Flame Arrester was exactly

23   as the Lundberg Defendants had designed, manufactured and sold the product, with no changes or

24   use, and when tested was in the same condition as it was when it was purchased by PCA from the

25   Lundberg Defendants.

26

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    75.    The 6" Test Flame Arrester was manufactured by Lundberg in 2017 and was

2    assigned P.O. No. 227024, Project No. J-175728, and Equipment No. 175728-G801-01:



12    76.    Aber Shock's inspection showed that the 6" Test Flame Arrester had more internal

13    space—*i.e.*, an unanticipated gap between the external housing and the internal cylindrical device.

14    Aber Shock's inspection also found that there was a larger than anticipated gap around the 6" Test

15    Flame Arrester's internal cylindrical device that could allow gases and a flame to bypass the

16    internal cylindrical device that was in place to provide the heat sink.  The internal cylindrical

17    device also had larger openings than competitors' designs.

18    77.    Aber Shock conducted industry approved testing to determine whether the 6" Test

19    Flame Arrester performed its primary purpose of preventing the proliferation of a flame introduced

20    into a Lundberg System.

21    78.    In accordance with established testing protocol for flame arresters (ISO 16852

22    section 7.3.2.2), Aber Shock intended to conduct the 2018 Test by subjecting the 6" Test Flame

23    Arrester to a series of tests with each test increasing in intensity.

24    79.    Under this testing protocol, the first test would subject the 6" Test Flame Arrester

25    to the least amount of energy (*e.g.*, the lowest concentration of flammable gas).  If the 6" Test

26    Flame Arrester performed as intended, subsequent tests would gradually increase the energy to

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

determine whether the 6" Test Flame Arrester was suitable for the Lundberg Systems: the purpose for which it had been designed, manufactured, and sold to PCA by the Lundberg Defendants.

80.    The independent third-party test that was conducted in accordance with an international testing protocol quickly demonstrated that the 6" Test Flame Arrester was completely ineffective. Indeed, during the first, lowest energy test, a flame easily passed through the 6" Test Flame Arrester.

81.    Despite Aber Shock anticipating several rounds of testing, only one test was able to be performed due to the impact that the lowest energy test had on the internal cylindrical device of the 6" Test Flame Arrester. The image below marked (b) shows the damage to the unprotected fact of the 6" Test Flame Arrester's internal cylindrical device immediately after the 2018 Test:



82.    This failure is exactly contrary to the stated purpose of incorporating the Lundberg Flame Arresters in the Lundberg Systems and presents a risk of explosion, injury, and death to anyone working near the Lundberg Systems.

83.    Luckily, the PCA Mills never experienced an explosion caused by the Lundberg Flame Arresters. Therefore, it was not until consultants for PCA tested the 6" Test Flame Arrester—January 2018—that PCA had an opportunity to learn that the Lundberg Flame Arresters were possibly defective and unlikely to prevent the propagation of flames.

84.    As confirmed during the 2018 Test at Aber Shock, the 6" Test Flame Arrester failed to provide any protection against flame propagation, failed to serve as a flame arrester, failed to perform as a safety device, and failed to serve the basic purpose for which it was designed,

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

manufactured, purchased, and installed.  Instead, it accelerated propagation of the flame through the system, which is directly contrary to the intended purpose of the flame arrester.

85.    After the independent test results were known, PCA worked diligently to evaluate replacement flame arresters manufactured and produced by other companies, to work with a new engineering and design firm to provide effective work-arounds and changes in existing systems, and removed all Lundberg Flame Arresters from the PCA Mills.

86.    Each of the 57 Lundberg Flame Arresters that had been installed at the PCA Mills were promptly dissembled and removed from the PCA Mills because they had not been designed, manufactured, tested, or certified to U.S. and international standards, simple facts that had been concealed from PCA by the Lundberg Defendants for decades.  And, as a result of the 2018 Test, the Lundberg Flame Arresters also appeared to have latent, internal defects and an inability to eliminate flame propagation in the Lundberg Systems.  PCA did all of this at its own costs, and also took steps to suspend or terminate virtually all work being done at its mills by the Lundberg Defendants.

87.    The process of removing all Lundberg Flame Arresters required the PCA Mills to be intermittently shut down, required new parts to be acquired, and required significant labor costs and time.

88.    PCA replaced the Lundberg Flame Arresters with a certified and tested flame arrester designed and manufactured by a non-party.

89.    PCA took these steps because the defective, untested, and uncertified Lundberg Flame Arresters posed serious risk to PCA's property and employees and had to be removed and replaced.

**B.    The 2019 Test Confirmed That Lundberg Flame Arresters Are Defective.**

90.    After removing the Lundberg Flame Arresters from the PCA Mills, PCA sent multiple Lundberg Flame Arresters to Aber Shock, the same independent third-party testing

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1  facility that conducted the 2018 Test.  PCA wanted to validate the 2018 Test, and to test multiple

2  Lundberg Flame Arresters of various sizes that had been in service.

3  91.  Aber Shock was available to conduct this testing in September 2019 ("2019 Test").

4  92.  Aber Shock conducted the tests in accordance with U.S. Coast Guard testing

5  protocols and standards, under the supervision of PCA and engineers from outside PCA.

6  93.  During the 2019 Test, Lundberg Flame Arresters that were 2", 4", and 6" capacity

7  were tested and <u>each and every Lundberg Flame Arrester failed each test</u>.  The Lundberg Flame

8  Arresters did absolutely nothing to stop or slow the passage of a flame from one side to another,

9  and flame easily and quickly passed through the internal cylindrical device.

10  94.  Remarkably, the Lundberg Flame Arresters actually <u>increased</u> the velocity and

11  magnitude of flame propagation.

12  95.  The 2019 Test showed that <u>it is more dangerous to install a Lundberg Flame</u>

13  <u>Arrester in a Lundberg System than it is to simply install a straight pipe of the same size</u>.  In other

14  words, Lundberg Flame Arresters act as flame accelerators, not flame arresters, and are the exact

15  opposite in performance and efficacy than a safety device.  The results of the testing are stark and

16  demonstrate the unreasonably dangerous nature of the Lundberg Flame Arresters.

17  96.  PCA spent millions of dollars to purchase the Lundberg Systems, to test the

18  Lundberg Flame Arresters that were defective as designed, manufactured, sold, and installed by

19  the Lundberg Defendants, to purchase replacements for the defective Lundberg Flame Arresters,

20  and to stop manufacturing to complete the labor needed to install the new certified flame arresters

21  in the Lundberg Systems.  All of these costs were brought about by the safety risks posed by the

22  defective Lundberg Systems and concealed by the Lundberg Defendants.  PCA seeks to recover

23  all these costs and fees.

24  97.  PCA reasonably believed that the Lundberg Defendants had designed,

25  manufactured, tested and/or certified the Lundberg Flame Arresters to U.S. and international

26  standards prior to installing them – taking reasonable steps to ensure that the Lundberg Flame

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   Arresters actually worked.  The Lundberg Defendants concealed these material facts from PCA

2   and the industry.  If PCA knew that the Lundberg Defendants had never tested and certified the

3   Lundberg Flame Arresters, PCA would not have purchased the Lundberg System from the

4   Lundberg Defendants.

5        98.    PCA now seeks to recover all costs associated with the Lundberg Defendants'

6   defective products, including the Lundberg Systems and Lundberg Flame Arresters.

7        99.    To the extent any applicable statute of limitation is at issue, it should be tolled due

8   to PCA's inability to discover the latent defects and the Lundberg Defendants' purposeful and

9   fraudulent concealment of both the latent defects and material facts.  It would be inequitable to bar

10  PCA from proceeding with this claim given the bad acts of the Lundberg Defendants and the

11  difficulty inherent in discovering and confirming that the Lundberg Flame Arresters are

12  defectively designed, defectively manufactured, unsafe, and unfit for use as expressly and

13  implicitly warranted.  This is especially true because the Lundberg Defendants held themselves

14  out as experts – basically the gold standard – in the industry for decades.

## FIRST CAUSE OF ACTION
### PRODUCT LIABILITY – NEGLIGENCE

17       100.   PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set

18  forth herein.

19       101.   PCA was harmed by the negligence of the Lundberg Defendants in that the

20  Lundberg Systems and Lundberg Flame Arresters were not reasonably safe as designed.

21       102.   PCA was harmed by the negligence of the Lundberg Defendants in that the

22  Lundberg Systems and Lundberg Flame Arresters were not reasonably safe because adequate

23  warnings or instructions were not provided.

24       103.   The Lundberg Systems and Lundberg Flame Arresters are not reasonably safe as

25  designed because, at the time of manufacture, the likelihood that the Lundberg Systems and

26  Lundberg Flame Arresters would cause PCA harm and the seriousness of the harms facing PCA

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    outweighed the burden on the Lundberg Defendants to design a product that would have prevented

2    those harms.

3          104.   At the time of manufacture, an alternative design was practical, feasible, and

4    already in existence and such alternative design would not encumber the purpose of the Lundberg

5    Systems and Lundberg Flame Arresters.  Indeed, best practices for designing and manufacturing

6    NCG evacuation systems (like the Lundberg System) and flame arresters (like the Lundberg Flame

7    Arresters) demonstrates that the Lundberg Defendants' proprietary design is unreasonably unsafe

8    and defective.

9          105.   Moreover, the Lundberg Systems and Lundberg Flame Arresters are not reasonably

10   safe because adequate warnings were not provided at the time of manufacture.  Namely, the

11   Lundberg Defendants did not provide warnings informing PCA that the Lundberg Systems and

12   Lundberg Flame Arresters were ineffective, untested, unsafe, uncertified, and unable to perform

13   their primary purpose.

14         106.   Additionally, the Lundberg Systems and Lundberg Flame Arresters are not

15   reasonably safe because the Lundberg Defendants learned after manufacturing the Lundberg

16   Systems and Lundberg Flame Arresters, or should have learned after manufacturing the Lundberg

17   Systems and Lundberg Flame Arresters, that the Lundberg Systems and Lundberg Flame Arresters

18   were inherently dangerous and not suitable for installation and use in the PCA Mills.

19         107.   The Lundberg Defendants had a duty to warn PCA about the danger posed by the

20   Lundberg Systems and Lundberg Flame Arresters at the time of manufacture, or, alternatively,

21   subsequent to manufacture.

22         108.   The Lundberg Defendants failed to provide a warning or instruction to PCA

23   regarding the inherently dangerous and defective nature of the Lundberg Systems and Lundberg

24   Flame Arresters.

25         109.   As demonstrated above, the Lundberg Systems and Lundberg Flame Arresters are

26   inherently and unreasonably unsafe and fail to perform their primary purpose.

**COMPLAINT - 25 OF 39**

110.    The inherently unsafe nature of the Lundberg Systems and Lundberg Flame Arresters was known, or should have been known, to the Lundberg Defendants before or after the date of manufacture.

111.    The Lundberg Defendants should have tested the Lundberg Flame Arresters before installing them in the Lundberg Systems.

112.    The Lundberg Defendants should have certified the Lundberg Flame Arresters before installing them in the Lundberg Systems.

113.    The Lundberg Defendants' failure to test the Lundberg Flame Arresters is unreasonable, unsafe, unjustified, and not consistent with engineering duties or best practices.

114.    The Lundberg Defendants' failure to certify the Lundberg Flame Arresters is unreasonable, unsafe, unjustified, and not consistent with engineering duties or best practices.

115.    The Lundberg Defendants also should have followed engineering best practices when designing the Lundberg Flame Arresters to ensure that the Lundberg Flame Arresters did not suffer from the aforementioned inherent and latent problems.

116.    Nevertheless, the Lundberg Defendants were negligent in designing and/or failing to warn of the risks of the Lundberg Flame Arresters in violation of law.

117.    The Lundberg Defendants had a duty to act as a reasonable engineering firm when designing, manufacturing, assembling, installing, marketing, selling, and maintaining the Lundberg Systems and the Lundberg Flame Arresters.

118.    The Lundberg Defendants breached this duty to PCA by failing to test the Lundberg Flame Arresters and accordingly failing to recognize and/or disclose that the Lundberg Flame Arresters were incapable of performing their stated purpose.

119.    PCA justifiably relied on the Lundberg Defendants' representations, both express and implied, as well as its stated expertise in the field of engineering for the paper and pulp industry.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

120.    PCA was directly and proximately damaged due to the Lundberg Defendants' negligent conduct in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**PRODUCT LIABILITY – STRICT LIABILITY**

121.    PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set forth herein.

122.    The Lundberg Defendants are strictly liable to PCA because PCA's harm was caused by the fact that that the Lundberg Systems and Lundberg Flame Arresters were not reasonably safe in construction and did not conform to the Lundberg Defendants' express warranty regarding the Lundberg Systems and Lundberg Flame Arresters.

123.    The Lundberg Systems and Lundberg Flame Arresters are not safe in construction because when they left the control of the Lundberg Defendants, the Lundberg Systems and Lundberg Flame Arresters deviated in some material way from the design specifications or performance standards of the Lundberg Defendants.

124.    Specifically, despite the Lundberg Defendants' statements to the contrary, the Lundberg Systems and Lundberg Flame Arresters were unsafe and not fit for installation or use in the PCA Mills, including because the Lundberg Flame Arresters were not effective in acting as a safeguard to prevent flames from spreading in the Lundberg System.

125.    Similarly, the Lundberg Flame Arresters were not consistent with the performance standards of Lundberg, which, at minimum, required the Lundberg Flame Arresters to prevent the spread of flames in the Lundberg System and act as a "flame safeguard" in the Lundberg Systems.

126.    Moreover, the Lundberg System and Lundberg Flame Arresters did not conform to the Lundberg Defendants' express warranty regarding the Lundberg System and Lundberg Flame Arresters.

127.    Specifically, the Lundberg Defendants stated that the Lundberg Flame Arresters are "an effective precaution against flame propagation and possible damage to process equipment."

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

128.   The Lundberg Defendants also stated that the Lundberg Flame Arresters have "proven to be a reliable and versatile device for system safety and protection."

129.   The Lundberg Defendants also stated that the Lundberg Flame Arresters were developed in a proprietary manner to "meet the rigorous standards of" Lundberg Systems.

130.   Each of these statements were material to PCA and justifiably relied upon by PCA.

131.   Each of these statements were materially false and the Lundberg Defendants knew, or should have known, that these statements were false.  Specifically, among other reasons, the Lundberg Defendants should have known that the statements were false due to their failure to test or certify the Lundberg Flame Arresters, a key safety feature of the Lundberg Systems.

132.   The Lundberg Defendants made these materially false statements with the intention of inducing reliance on the part of PCA so that PCA would opt to purchase the Lundberg System and Lundberg Flame Arrester as opposed to a competitor's product.

133.   PCA would not have purchased or utilized the Lundberg System or Lundberg Flame Arresters if PCA knew that the safeguards inherent in the Lundberg Systems and Lundberg Flame Arresters were defective.

134.   PCA was harmed by the Lundberg Defendants' conduct—conduct for which the Lundberg Defendants are strictly liable—in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
#### NEGLIGENCE

135.   PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set forth herein.

136.   The Lundberg Defendants are an expert engineering firm who contracts to design, manufacture, assemble, and install systems, including Lundberg Systems and Lundberg Flame Arresters, at paper and pulp mills.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

137.    As such, the Lundberg Defendants had a duty to design its systems, including the Lundberg Systems and Lundberg Flame Arresters, with appropriate safeguards sufficient to minimize the risk encountered in transporting and incinerating combustible NCGs.

138.    One aspect of this duty was the Lundberg Defendants' duty to test the Lundberg Systems and Lundberg Flame Arresters prior to representing that they were safe and appropriate for installation and use in the PCA Mills, including the Lundberg Defendants' representation that the Lundberg Flame Arresters were an effective safeguard to prevent flame propagation in Lundberg Systems.

139.    The Lundberg Defendants' duties were especially important in this context given that it knew that PCA was relying on it to design and install a safe and compliant Lundberg System in the PCA Mills and that failure to provide a safe and compliant Lundberg System put employees' lives and PCA's property at risk.

140.    To address the known risk of combustion in Lundberg Systems, the Lundberg Defendants used a "proprietary design" to manufacture the Lundberg Flame Arresters, specifically noting that the Lundberg Flame Arresters were developed in a proprietary manner to "meet the rigorous standards of [Lundberg Systems]."  At a minimum, the "rigorous standards of [Lundberg Systems]" includes safe operation as advertised and marketed by the Lundberg Defendants.

141.    Nevertheless, the Lundberg Defendants breached their duty to PCA by designing, manufacturing, assembling, and installing defective Lundberg Systems with defective Lundberg Flame Arresters.

142.    Both the Lundberg Systems and the Lundberg Flame Arresters had latent defects that could not be and should not have reasonably been discovered by PCA until third-party testing demonstrated and confirmed that the Lundberg Systems and Lundberg Flame Arresters were defective.  This did not occur until September 2019.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

143.    Further, the Lundberg Defendants breached their duty to PCA by installing Lundberg Flame Arresters that had never been tested, had not been certified, and for which the efficacy had not been confirmed.

144.    The Lundberg Defendants' breach is especially egregious given that the Lundberg Flame Arresters are a last line of defense in the Lundberg System and are supposed to prevent property damage and serious injury or death.

145.    The Lundberg Defendants' unsafe and negligent attitude towards the safety of the Lundberg System, including its failure to test the Lundberg Flame Arrester, is the direct and proximate cause of PCA's injury.

146.    Indeed, PCA would not have spent millions of dollars testing and ultimately replacing the Lundberg Systems and Lundberg Flame Arresters had these safety products worked as advertised and marketed.

147.    PCA also would not have purchased, installed, or maintained the Lundberg Systems or Lundberg Flame Arresters if it had known that these products contained latent defects.

148.    PCA also would not have replaced the defective Lundberg Systems and Lundberg Flame Arresters had they not been defective.

149.    PCA could have avoided shutting down the PCA Mills to complete the repair and replacement work had the Lundberg Systems and Lundberg Flame Arresters performed as warranted, advertised, and marketed by the Lundberg Defendants.

150.    PCA was harmed by the Lundberg Defendants' negligence in the amount of millions of dollars, the exact amount to be determined at trial.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

<u>**FOURTH CAUSE OF ACTION**</u>
**BREACH OF IMPLIED WARRANTY – FITNESS FOR A PARTICULAR PURPOSE**

151.    PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set forth herein.

152.    The Lundberg Defendants knew that PCA hired them to design a safe and effective Lundberg System at the PCA Mills.

153.    The Lundberg Defendants also knew that PCA was not an expert in the design, manufacture, assembly, or installation of Lundberg Systems.

154.    The Lundberg Defendants knew that PCA was relying on the Lundberg Defendants' engineering expertise for paper and pulp mills when PCA hired the Lundberg Defendants to design, manufacture, assemble, and install the Lundberg System and Lundberg Flame Arresters.

155.    By virtue of the Lundberg Defendants stating that the Lundberg Systems and Lundberg Flame Arresters were safe and fit for installation and use in the PCA Mills, including the Lundberg Defendants' representation that the Lundberg Flame Arresters were an effective safeguard against flame propagation, PCA justifiable and reasonably believed that the Lundberg Defendants had a basis to represent that the Lundberg Flame Arresters would prevent flame propagation throughout the Lundberg System.

156.    By virtue of the Lundberg Defendants installing the Lundberg Flame Arresters in the Lundberg System after having repeatedly noted the highly combustible nature of NCG gases, PCA justifiably and reasonably believed that the Lundberg Flame Arresters were safe and fit to be installed and used in the Lundberg Systems.

157.    At minimum, PCA justifiably and reasonably believed that the Lundberg Defendants had tested the Lundberg Flame Arresters prior to integrating them as a safeguard in the highly combustible Lundberg System given how many representations the Lundberg

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1  Defendants made regarding the need for Lundberg Systems to incorporate properly operating

2  flame arresters.

3     158.    Nevertheless, the Lundberg Defendants had not tested the Lundberg Flame

4  Arresters and had no basis to represent that the Lundberg System was safe for use in the PCA

5  Mills.

6     159.    Had the Lundberg Defendants tested the Lundberg Flame Arresters, they would

7  have quickly discovered that the proprietary design utilized by the Lundberg Defendants was

8  ineffective and actually served to act as a flame accelerator as opposed to a flame arrester.

9     160.    As a result of the Lundberg Defendants' unreasonable decision not to test the

10 Lundberg Flame Arresters, the Lundberg Systems and the Lundberg Flame Arresters were not fit

11 for their intended purpose of safely transporting and disposing of NCGs at the PCA Mills.

12    161.    The Lundberg Defendants knew that PCA was relying on the Lundberg

13 Defendants' status as an expert engineering firm when it manufactured, designed, assembled, and

14 installed the defective Lundberg Flame Arresters in the Lundberg Systems.

15    162.    PCA is not an expert engineering firm and does not design, manufacture, assemble,

16 or install Lundberg Systems.  It thus justifiably and reasonably relied on the Lundberg Defendants'

17 expertise and design specifications.

18    163.    PCA had no way of knowing that the Lundberg Flame Arresters were defectively

19 designed until the 2019 Tests were completed.

20    164.    The Lundberg Defendants' breach of the implied warranties directly and

21 proximately caused PCA's injury in an exact amount to be determined at trial.

22
23
### FIFTH CAUSE OF ACTION
#### BREACH OF EXPRESS WARRANTY

24    165.    PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set

25 forth herein.

26

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

166.    The Lundberg Defendants expressly warranted that the Lundberg Flame Arresters are "an effective precaution against flame propagation and possible damage to process equipment."

167.    The Lundberg Defendants also stated that the Lundberg Flame Arresters have "proven to be a reliable and versatile device for system safety and protection."

168.    The Lundberg Defendants also stated that the Lundberg Flame Arresters were developed in a proprietary manner to "meet the rigorous standards of" Lundberg Systems.

169.    These statements were material to PCA and PCA justifiably relied on these statements made by the Lundberg Defendants.

170.    PCA would not have hired the Lundberg Defendants to design, manufacture, assemble, and install the Lundberg Systems and Lundberg Flame Arresters at the PCA Mills but for the representations that the Lundberg Systems and Lundberg Flame Arresters were safe and compliant with all applicable environmental and safety regulations and standards.

171.    These statements made by the Lundberg Defendants are false as shown by the results of the 2019 Tests.

172.    Moreover, the Lundberg Defendants had no basis on which to make these statements as they had unreasonably and unjustifiably decided to not test or certify the Lundberg Flame Arresters.

173.    The Lundberg Defendants made express safety-related statements for which it had no basis in order to induce PCA to purchase and install the Lundberg Systems and Lundberg Flame Arresters at the PCA Mills.

174.    PCA's justifiable reliance led it to expose its employees and mills to unrealized danger.  It also exposed PCA to millions of dollars in damages, none of which would have occurred but for the unreasonable and unjustifiable misrepresentations made by the Lundberg Defendants.

175.    The Lundberg Defendants breached express warranties made to PCA.

176.    The Lundberg Defendants' breach of the express warranties directly and proximately caused PCA's injury in an exact amount to be determined at trial.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## SIXTH CAUSE OF ACTION
### FRAUD

177.    PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set forth herein.

178.    The Lundberg Defendants know that the Lundberg Systems transport flammable and highly combustible NCGs and that "these gases present the possibility of flame propagation in the collection system's pipe lines."

179.    The Lundberg Flame Arresters were designed and marketed as a safeguard to minimize the risk of flame propagation in the Lundberg Systems.

180.    Nevertheless, the Lundberg Defendants never tested the efficacy of the Lundberg Flame Arresters, never had them certified and had no basis on which to believe that they would act as a safeguard to prevent flame propagation.

181.    The Lundberg Defendants thus made false statements of material fact regarding the efficacy of the Lundberg Flame Arresters.  Moreover, the Lundberg Defendants actively concealed material facts – no testing and no certification – from PCA.

182.    Specifically, the Lundberg Defendants stated that the Lundberg Flame Arresters are "an effective precaution against flame propagation and possible damage to process equipment."

183.    The Lundberg Defendants also stated that the Lundberg Flame Arresters have "proven to be a reliable and versatile device for system safety and protection."

184.    The Lundberg Defendants also stated that the Lundberg Flame Arresters were developed in a proprietary manner to "meet the rigorous standards of" Lundberg Systems.

185.    The Lundberg Defendants knew that these statements of material fact were false because they never tested or certified the Lundberg Flame Arresters and thus had no basis on which to make such claims.

186.    The Lundberg Defendants made these statements to induce PCA to buy Lundberg Systems and Lundberg Flame Arresters in an effort to make a profit and notwithstanding that it

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1  put PCA's employees at risk of serious injury or death and threatened property damage to PCA's

2  Mills.

3       187.   The Lundberg Defendants knew that PCA was relying on the Lundberg

4  Defendants' engineering expertise and that PCA relied on these and other representations when

5  deciding to hire the Lundberg Defendants to design, manufacture, install, and assemble the

6  Lundberg Systems and Lundberg Flame Arresters at the PCA Mills.

7       188.   The Lundberg Defendants also knew that PCA would not have hired the Lundberg

8  Defendants to design, manufacture, install, and assemble the Lundberg Systems and Lundberg

9  Flame Arresters if PCA knew that the Lundberg Flame Arresters were ineffective and did not

10 prevent flame propagation.

11      189.   PCA was directly and proximately damaged by the Lundberg Defendants' material

12 and knowing false statements because it cost PCA millions of dollars to purchase the Lundberg

13 Systems, maintain the Lundberg Systems, test the Lundberg Flame Arresters, replace the Lundberg

14 Flame Arresters with work-arounds to incorporate a non-native product into the Lundberg System,

15 and stop production at the PCA Mills to complete the replacement.

16      190.   PCA's injury was directly and proximately caused by the knowingly false

17 statements of the Lundberg Defendants.

18      191.   The Lundberg Defendants' fraudulent conduct and fraudulent statements directly

19 and proximately caused PCA's injury in an exact amount to be determined at trial.

20                          **SEVENTH CAUSE OF ACTION**
21                **UNFAIR AND DECEPTIVE BUSINESS PRACTICES (RCW 19.86.020)**

22      192.   PCA realleges and incorporates all prior paragraphs of this Complaint as if fully set

23 forth herein.

24      193.   Pursuant to RCW 19.86.020, the Lundberg Defendants engaged in unfair methods

25 of competition and unfair or deceptive acts or practices in the conduct of knowingly selling PCA

26 the defective Lundberg Systems and Lundberg Flame Arresters with latent defects.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

194.    The Lundberg Defendants held themselves out to be an expert engineering firm with a specific emphasis in the paper and pulp mill industry.

195.    In fact, the Lundberg Defendants describes themselves as "a leading engineering and equipment supplier in the pulp and paper industry, wood products industry, and many other process industries."

196.    The Lundberg Defendants acknowledge that "[t]he nature of the noncondensible gases is to be extremely flammable.  The design of the [Lundberg System] includes multiple backup systems to insure the greatest amount of flame safeguards and to minimize any remotely possible damage."

197.    The "backup systems" and "flame safeguards" described by the Lundberg Defendants including, among other things, the Lundberg Flame Arresters.

198.    The Lundberg Defendants describe the role of Lundberg Flame Arresters in a Lundberg System as follows:  "these flow devices placed at strategic locations in the system are designed to block the propagation of the flame in the noncondensible gas system.  The cylindrical devices have a core of thin gauge stainless steel to serve as the arresting method.  The flame arresters are intended to:

    a.   Dissipate the heat of combustion as rapidly as possible by large surface area to act as a heat sink.

    b.   Disrupt the shock front associated with the flame propagation."

199.    The Lundberg Flame Arresters are an integral part of the Lundberg System and without properly functioning Lundberg Flame Arresters the Lundberg System would be unsafe and not fit for installation in a paper and pulp mill.

200.    In fact, in marketing material prepared and disseminated by the Lundberg Defendants, the Lundberg Defendants describes the Flame Arresters as follows:

> The collection of [Total Reduced Sulfur compounds] and volatile
> gases in Noncondensible [sic] Gas (NCG) and Odor Abatement

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Systems is an integral part of the pulp mill's environmental program. The flammability of many of these gases presents the possibility of flame propagation in the collection system's pipe lines. The flame arrester is an effective precaution against flame propagation and possible damage to process equipment. To meet the rigorous standards of our Lundberg Systems, Lundberg Associates developed and supplies a proprietary designed flame arrester.

Since 1977, in more than two hundred installations, the Lundberg Associates' Flame Arrester has proven to be a reliable and versatile device for system safety and protection.

201.   Nevertheless, the Lundberg Defendants—an expert engineering firm in the paper and pulp mill industry—failed to test the Lundberg Flame Arresters despite acknowledging that the Lundberg Flame Arresters are an integral safeguard for the Lundberg Systems.

202.   Had the Lundberg Defendants tested the Lundberg Flame Arresters, they would have known that the Lundberg Flame Arresters do not work and, instead, accelerate flames throughout the Lundberg Systems.

203.   The Lundberg Defendants' false representations regarding the safety and efficacy of the Lundberg Systems and the Lundberg Flame Arresters constitutes a deceptive and unfair business practice.

204.   The Lundberg Defendants' reliance on its status as an expert engineering firm to sell Lundberg Systems without testing the integral safeguards, such as the Lundberg Flame Arresters, is a deceptive and unfair business practice.

205.   PCA would not have purchased the Lundberg System or Lundberg Flame Arrester if Lundberg had disclosed that it had not tested the Lundberg Flame Arresters or that the Lundberg System was unsafe and unfit for installation and use in the PCA Mills.

206.   PCA would not have purchased the Lundberg System or Lundberg Flame Arresters if Lundberg had disclosed that the Lundberg System was unsafe and lacking effective safeguards.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

207.    PCA would not have purchased the Lundberg System if Lundberg had disclosed that the Lundberg Flame Arresters were not fit for their stated purpose of mitigating the spread of flames throughout the Lundberg System.

208.    PCA was harmed by the Lundberg Defendants' deceptive and unfair business practices in an amount to be determined at trial.  Moreover, pursuant to RCW 19.86.090, PCA seeks treble damages and attorneys' fees for the Lundberg Defendants' unfair and deceptive business practices.

## PRAYER FOR RELIEF

WHEREFORE, PCA requests the following relief:

A.    All damages associated with purchasing and maintaining the defective Lundberg Systems and Lundberg Flame Arresters, the exact amount to be determined at trial;

B.    All damages associated with testing the defective Lundberg Systems and Lundberg Flame Arresters, the exact amount to be determined at trial;

C.    All damages associated with replacing the defective Lundberg Flame Arresters, the exact amount to be determined at trial;

D.    All damages associated with the Lundberg Defendants' fraudulent statements and fraudulent concealment of the defective nature of the Lundberg Systems and Lundberg Flame Arresters;

E.    All damages associated with Lundberg's unfair and deceptive business practices, including treble damages pursuant to RCW 19.86.090;

F.    All attorneys' fees, court costs, and other associated expenses; and

G.    All other damages deemed suitable by this Court.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Dated:  October 31, 2019

Respectfully submitted,

*/s/ Christopher B. Durbin*

Christopher B. Durbin (WSBA #41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA  98101-1355
Tel.: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

Eric Kuwana (*Pro Hac Vice* to be filed)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, D.C.  20004-2446
Tel.: (202) 842-7800
Fax: (202) 842-7899
Email: ekuwana@cooley.com

Andrew Barr (*Pro Hac Vice* to be filed)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021
Tel.: (720) 566-4121
Fax: (720) 566-4099
Email: abarr@cooley.com

Attorneys For Plaintiff PACKAGING CORPORATION OF AMERICA, INC.

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700